BOURNE (MERRIMAN v.). See Case No. 9,480.

## Case No. 1,701.
### BOURNE v. SMITH.
[1 Lowell, 547.][1]
District Court, D. Massachusetts. March Term, 1871.

SHIPPING—THE MASTER—LAY OF WHALING CATCH —CUSTOM AND USAGE — EVIDENCE—BURDEN OF PROOF.

1. A usage for masters of whaling vessels to wait for their lays until the owners shall choose to sell the oil is unreasonable and void.

2. It seems, that a master might, for a valuable consideration, bind himself so to wait in a particular voyage.

3. The burden of proving such an agreement is on the owners.

4. Such an agreement held not to be proved in this case.

5. The master is not to suffer a diminution of his lay for oil sold on credit and never paid for, though due diligence was exercised by the owner.

[Cited in Crowell v. Knight, Case No. 3,445.]

In admiralty. The libellant [G. W. Bourne] proceeded for his lay of one-thirteenth in the oil and bone procured on the Atlantic whaling cruise of the schooner William Martin, of which he was master, and the defendant [Heman Smith] was managing owner. The voyage began in November, 1867, and ended in September, 1868; and the libel was filed in March, 1871. The answer admitted the voyage and stated the amount of oil taken, but set up as a bar to the action, that on the arrival of the vessel, the libellant instructed and requested the defendant as agent of the vessel and her owners to take the oil and keep it until he should think it for the interest of all concerned to sell, which time has not yet arrived, excepting as to a small part thereof, which he sold to a person in good credit, and after due inquiry and care, but who has never paid for it. [Decree for libellant.]

C. T. Bonney, for libellant.
J. L. Eldridge, for respondent.

LOWELL, District Judge. A long series of careful decisions by Judge Sprague, rarely appealed from, and in no important particular varied by the circuit court, has settled the law of this court in respect to the

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

rights and duties of the owners and men concerned in whaling voyages. The master and crew have no property in the oil, no voice in its disposition, no right to demand any specific portion of it,. against the wish of the owners; their lays are wages, which, by consent, they may take in kind, but which in the absence of such consent, they are entitled to have paid them at the cash price in the port of delivery, as soon after the arrival of the vessel as the amount and quality can be reasonably ascertained.

Any possible hardship that this course of business may be supposed to cause to the owners, is compensated in this way: they have full power to sell in good faith enough oil to satisfy the demands of the seamen, and such a sale fixes the price, and they cannot suffer loss, or if they do not care to do that they are bound to account for the cash price only. Whether these decisions, which cover a great many particulars, not important to be mentioned now, were thought by the owners to be sufficiently favorable to them, I do not know; but they have certainly acquiesced in the greater part of them, and voyages are constantly settled by the rules so established. Some points which formerly rested on doubtful usages have now been incorporated into the contracts; such as the right to ship home oil in the course of the cruise, which appears to be a reasonable and useful modification of the agreement. Some others concerning charges to be made by the owners may still be disputable.

In the present case the defendant, at the hearing, asked leave to amend his answer by setting up a custom of the port of Boston, which is the place referred to in the articles, and is the home port of the schooner, for masters to wait until the oil is sold before receiving their wages. As the libellant was not prepared with evidence on this point, I refused to permit the amendment, excepting as laying a foundation for evidence before the assessor, if the case should go farther. Upon reflection I cannot bring myself to think that such a usage would be reasonable. The master is often poor, dependent for his support and that of his family on his earnings; the supposed usage gives him no property in the oil and no right to interfere in its disposition; the owners may often have reasons connected with their own business for putting off the sale, and they are sure to gain interest and expenses; and the supposed usage is altogether a one-sided affair which no court could tolerate. I shall therefore refuse to refer any such question to the assessor.

The defence besides undertakes to make out a contract by this master to wait for his lay so long as the defendant shall see fit to keep the oil, or any part of it unsold. That such a bargain might lead to a delay of more than two years and a half, this case plainly shows, and it would be very difficult to sustain such an agreement, as against the seamen, excepting upon the most plenary proof that it was entered into understandingly and for a valuable consideration. I do not remember that any of the numerous cases which deny the power of owners to incorporate unusual and onerous stipulations into their shipping articles, have applied that protection to the master, who is an agent of the owners, supposed to be a man of intelligence and capacity, and I am inclined to think that a master may, if he chooses, bind himself by a contract, which if set up as a usage would be unreasonable, or if imposed upon a crew would be oppressive.

The contract here set up, if expressed in common law terms, would be this: In consideration that the owners would give the libellant the advantage of any rise there might be in the price of the oil, he agreed not to demand his wages until the oil was sold. The parties are in direct conflict upon the question, whether such a bargain was ever made. I see no reason to doubt that the owners have acted in good faith, under a claim of right, and that they would have given the plaintiff the advantage of a rise. As oil has unfortunately fallen largely in price, this controversy was to be expected, and that is one objection to making such a bargain by parol. The burden of proving this special defence is on the defendant, and I do not think he has sustained it. Trying, as I always do, to give the utmost weight to the evidence on both sides, so far it appears to be honestly given, and looking to see a possible explanation of the apparent contradictions, I yet find it impossible to reconcile the statements of the only important witnesses, the parties to the action.

The master declares that he repeatedly asked for a settlement, and he proves that when he went on his next voyage in November, 1868, he left a power of attorney with a friend to settle his voyage. The friend swears that he demanded a settlement, but was told by the defendant that the libellant had agreed to wait till the oil was sold. On the other hand the defendant swears that neither the libellant nor his attorney ever demanded a settlement, but that they merely asked him when the oil would be sold, and consulted with him about it.

Such a contract ought to be proved by clear and decisive evidence, because it is in derogation of the rights of the master, and the parties do not stand on a footing of entire equality. Upon the weight of the evidence, including the improbability that the owner would make a definite bargain upon a subject which he considered to be regulated by usage as matter of right, I must hold that the defence is not made out. My decree must be for the libellant, with

a reference to ascertain the cash value of his lay within a reasonable time after the arrival of the vessel. Of course the libellant has no concern with the sale on credit, for it is not pretended that his contract required him to guarantee the sales as well as to wait till they were made, and the general rule is well settled that all such sales are at the absolute risk of the owners. Decree for the libellant.